IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID WAYNE LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:19-cv-838-SRW |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

Plaintiff David Wayne Lee commenced this action on October 31, 2019, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* Docs. 1, 12, 13.[1] Plaintiff filed his application for benefits on April 8, 2018, alleging that he became disabled on June 15, 2016. Doc. 15-5; R. 152. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Doc. 15-4 at 7, 11; R. 101, 105. On April 23, 2019, ALJ Robert Waller issued an adverse decision after holding a hearing on plaintiff's application. Doc. 15-2 at 8-10; R. 7-9. On September 5, 2019, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. *See* Doc. 15-2 at 2-4; R. 1-3; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Plaintiff filed a brief (Doc. 12), and subsequently filed a corrected version (Doc. 13). All references to plaintiff's brief in this memorandum and order refer to the corrected brief.

In the instant appeal, plaintiff asks the court to reverse and remand the Commissioner's decision under the fourth sentence of 42 U.S.C. § 405(g) with instructions to evaluate the residual functional capacity properly, consider all impairments properly, and issue a new decision based on substantial evidence and proper legal standards—or, in the alternative, to remand this cause to the Commissioner under the sixth sentence of 42 U.S.C. § 405(g) with instructions to evaluate the new and material evidence properly and issue a new decision based on substantial evidence and proper legal standards. *See* Docs. 1 at 2; 13 at 13. This case is ripe for review pursuant to 42 U.S.C. §§ 405(f) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 6, 7. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be affirmed.

## II.     Standard of Review

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted).

The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted merely because the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

3

>(1) Is the person presently unemployed?
>(2) Is the person's impairment severe?
>(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1 [the Listing of Impairments]?
>(4) Is the person unable to perform his or her former occupation?
>(5) Is the person unable to perform any other work within the economy?
>An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–1239. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id*. at 1242–1243. At the fifth step, the ALJ considers the claimant's RFC, age,

---

[3]*McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and *vice versa*. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id.* at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

### III.   Administrative Proceedings

Plaintiff was 47 years old at the time he filed his application for DIB and 48 at the time of the ALJ's decision. *See* Doc. 15-2 at 39; R. 38. Plaintiff is a resident of Enterprise, Alabama, and lives in a house with his girlfriend and her thirteen-year-old son. *See id.* Plaintiff completed a GED and also completed a master mechanic certification. *Id.* at 40; R. 39.

Plaintiff claims that his ability to work is limited by diabetes, a lower back injury, chronic pain, irritable bowel syndrome, hearing loss, depression, anxiety disorder, post-traumatic stress disorder, nerve damage and nerve pain, high blood pressure, and insomnia. *See* Doc. 15-6 at 6; R. 172. Plaintiff previously worked as a master mechanic. *See* Docs. 15-2 at 40-43, 15-6 at 7; R. 39-42, 173. Plaintiff last worked as commercial heavy line mechanic from 2004 to 2017, and was in the National Guard during that same period. *See*

Doc. 15-2 at 40-42; R. 39-41. Plaintiff is still a member of the National Guard, and last drilled in June 2018. *See* Doc. 15-2 at 71-72; R. 70-71.

Following the administrative hearing, and employing the five-step process, the ALJ found at step one that plaintiff had "not engaged in substantial gainful activity since July 15, 2016, the alleged onset date[.]" Doc. 15-2 at 13; R. 12. At step two, the ALJ found that plaintiff suffered from the following severe impairments: "back disorder, right arm disorder, knee disorder, neuropathy, diabetes mellitus, post-traumatic stress disorder, and anxiety[.]" *Id.* At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *Id.* at 14; R. 13. Next, the ALJ articulated plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that he can frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger with his right upper extremity. The claimant's ability to understand, remember, and apply information and concentrate, persist, and maintain pace is limited to performing simple and routine tasks and his ability to use judgment is limited to simple work-related decisions. The claimant can interact with supervisors, co-workers, and the public occasionally and he can deal with occasional changes in a routine work setting. He can sustain concentration and attention for two-hour periods.

*Id.* at 15-16; R. 14-15. At step four, based on the plaintiff's RFC, the ALJ concluded that plaintiff "is unable to perform any past relevant work[.]" *Id.* at 22; R. 21. At step five, based on the plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the plaintiff can perform[.]" *Id.* at 23; R. 22. Accordingly, the ALJ

determined that plaintiff "has not been under a disability . . . from July 15, 2016, through the date of [the ALJ's] decision[.]" *Id.* at 24; R. 23.

### IV. Issue on Appeal

Plaintiff raises two issues on appeal which are discussed below in turn—whether the ALJ failed to consider plaintiff's visual impairments properly, and whether the ALJ's RFC was not based on substantial evidence.

### V. Discussion

1. Visual Impairments

Plaintiff argues that the ALJ failed to consider evidence of plaintiff's visual impairments properly because the ALJ found that plaintiff's glaucoma and cataracts were non-severe due to the absence of record evidence showing "significant abnormalities on physical examination" despite medical records which demonstrate that plaintiff obtained regular treatments for his visual impairments which were rated as moderately severe. *See* Doc. 13-1 at 9.

The Commissioner argues that plaintiff did not meet his burden of proving that his visual impairments were severe impairments as defined by the social security regulations, and that substantial evidence supports the ALJ's determination of plaintiff's RFC and the ALJ's finding that plaintiff's subjective complaints of disabling symptoms and limitations, including those regarding his visual impairments, were unsupported by the record. *See* Doc. 14 at 5.

A severe impairment is an "impairment or combination of impairments which "significantly limits [a claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). Basic work activities include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b). The severity of a disability "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standard of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). A severe impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "An impairment can be considered not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987) (per curiam) (quoting *Brady v. Heckler*, 724 F.3d 914, 920 (11th Cir. 1984) (internal quotations omitted)); *see also* 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities"). While the claimant bears the burden of proving he has a severe impairment or combination of impairments, the burden is a "mild" one, and a claimant only need show that his impairment is "not so slight and its effect is not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see also Schink v.*

*Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (citing *McDaniel*, 800 F.2d at 1031)).

Applying the foregoing standards, the court concludes that substantial evidence supports the ALJ's determination that plaintiff's visual impairments were not severe. The ALJ determined that, "[a]ccording to the pertinent record, the claimant has not experienced ongoing difficulties with the specific symptoms associated with these conditions," and that they "have not imposed upon him more than minimal functional limitations." Doc. 15-2 at 14; R. 13. Plaintiff testified that he occasionally gets blurred vision every seven or eight hours, which requires him to remove his glasses and rub his eyes; that his night vision is "almost impossible"; and that he has reoccurring headaches which be believes may be caused by his vision problems. *See* Doc. 15-2 at 74-75; R. 73-74. Plaintiff also testified that he works on his own and his girlfriend's vehicles, does regular household maintenance activities, and plays Playstation and Facebook video games and chess. *See* Doc. 15-2 at 65-67; R. 64-66. Medical records from Dr. Kirk Sturridge show that plaintiff was diagnosed with "primary open-angle glaucoma bilateral moderate stage" and "combined form of age-related cataract, bilateral" on September 18, 2018 (Doc. 15-13 at 71; R. 792), and that Dr. Sturridge confirmed these findings and continued to see plaintiff on November 28, 2018 (Doc. 15-13 at 65; R. 786), December 20, 2018 (Doc. 15-13 at 62; R. 783), January 21, 2019 (Doc. 15-13 at 59; R. 780), and February 25, 2019 (Doc. 15-13 at 56; R. 776). Dr. Sturridge's reports describe plaintiff's glaucoma as "stable" and self-described by plaintiff as moderately severe. Medical records from Dr. J. Christopher McNeal on February 19, 2019 note that plaintiff's glaucoma severity was "moderate" in both eyes, but that plaintiff

retained 99% and 96% of his visual field index in his right and left eyes, respectively, and that the severity of plaintiff's visual field loss was "minimal" in the right eye and "mild" in the left eye. *See* Doc. 15-15 at 32; R. 897. The medical records do not establish that Plaintiff's visual impairments can be expected to interfere with his ability to work, irrespective of age, education, or work experience. Plaintiff has, therefore, filed to prove that his visual impairments were severe impairments.

    2.    Contact with the Public

Plaintiff argues that the ALJ's RFC was not based on substantial evidence because the ALJ "improperly and implicitly rejected" a portion of medical opinion given by Dr. Veits without providing any rationale for his implicit rejection. *See* Doc. 13-1 at 13. Specifically, plaintiff argues that the ALJ failed to consider Dr. Veits' opinion that plaintiff could only maintain casual contact with the public at step five in determining whether other work that plaintiff could do exists in significant numbers in the national economy. *See* Doc. 18 at 1-2.

The Commissioner argues that the jobs provided for by the VE and ALJ at step five—garment folder, linen grader, and wearing apparel shaker—sufficiently accounted for Dr. Veits' opinion regarding plaintiff's limitations on contact with the public, and that plaintiff failed to prove that he could not perform the jobs identified by the ALJ. *See* Doc. 14 at 12.

On January 18, 2017, the Social Security Agency published revisions to its regulations regarding the evaluation of medical evidence, which apply to claims filed on or after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence

82 Fed. Reg. 5844 (Jan. 18, 2017); *see also* 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final rules published at Fed. Reg. 5844). Plaintiff filed his application for benefits on April 8, 2018. Doc. 15-5; R. 152. Therefore, the revisions apply in the instant case. Under the new regulations, there are five categories of evidence: (1) objective medical evidence, such as medical signs, laboratory findings, or both, as defined in § 404.1502(f); (2) medical opinions, which are statements from a medical source about what a claimant can still do despite his or her impairment(s) and whether a claimant has one or more impairment-related limitations or restrictions in the abilities listed in 20 C.F.R. § 404.1513(2)(i)-(iv); (3) other medical evidence, such as judgments about the nature and severity of a claimant's impairments, medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis; (4) evidence from nonmedical sources, such as forms and administrative records from nonmedical sources, including from the claimant herself; and (5) prior administrative medical findings, which are findings, other than the disability determination, about a medical issue made by Federal and State agency medical and psychological consultants at a prior level of review in a claimant's disability claim based on their review of the record. *See* 20 C.F.R. § 404.1513(a)(1)-(5).

The revisions state that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources." 20 C.F.R. § 404.1520c(a). The most important factors to be considered are those of supportability and consistency, and the persuasiveness of any medical opinion or administrative finding is considered in light of those two factors. *Id.* §§ 404.1520c(a), (c)(1)-(2). The ALJ will also

11

consider the relationship of the source to the claimant, the specialization of the source, and other factors such as evidence showing that a source has familiarity with other evidence in the claim and with the disability program's policies and evidentiary requirements, whether new evidence makes the opinion or finding more or less persuasive. *Id.* §§ (c)(3)-(5). While the Commissioner "will explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings," the ALJ "may, but [is] not required to, explain how they considered the factors in (c)(3)-(5) when articulating how they consider medical opinions and prior administrative medical findings. *Id.* § 20 C.F.R. 404.1520c(b)(2).

Dr. Harold Veits, the state agency consultant who produced a disability determination explanation on August 9, 2018 after reviewing plaintiff's medical record, stated that plaintiff was "moderately limited" in his ability to interact appropriately with the general public, and that plaintiff's "contact with the general public should be casual." Doc. 15-3 at 12; R. 91. The ALJ found Dr. Veits' opinions to be persuasive "in that they were consistent with the medical record presented at the hearing level, including the claimant's response to treatment and the failure of the record to display worsening of the claimant's medical conditions," and found that Dr. Veits "has program knowledge as a basis for drawing sound conclusions." The ALJ's RFC determination took Dr. Veits' medical opinion into account, indicating that "[t]he claimant can interact with supervisors, co-workers, and the public occasionally[.]" Doc. 15-2 at 16; R. 15. The ALJ noted that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of

record[.]" Doc. 15-2 at 16; R. 15. The ALJ properly explained the supportability and consistency of Dr. Veits' opinion, did not disregard or reject the opinion, and considered it in determining plaintiff's RFC. The ALJ was not required to defer or give specific weight to Dr. Veits' opinion.

Further, even if the ALJ had been obliged to give controlling weight to Dr. Veits' opinion concerning plaintiff's ability to interact with the general public, the error would be harmless because the jobs identified by the VE and ALJ do not require interaction with the public. The Dictionary of Occupational Titles ("DOT") describes the job of a garment folder as follows:

> Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and jackets: Shakes out, smooths, folds, sorts, and stacks wash according to identification tags. Inspects pressed laundry for holes or tears, and separates defective articles for transfer to repair department. Folds laundry, preparatory to wrapping, for delivery to customer. Folds pressed shirts around cardboard forms and inserts assembly in plastic bags. May attach missing buttons to articles, using button-sewing-machine or button-attaching machine. May unload tumbler. May turn socks, match pairs, and tie socks into bundles.

U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991) § 369.687-018. The work of a garment folder involves light physical demands, common sense understanding to carry out one or two-step instructions, the ability to perform basic math functions, and the ability to read, write, and speak at specified levels, and does not require significant functions related to interacting with people. *Id.* The DOT describes the job of a wearing apparel shaker as follows:

> Shakes out semidry wearing apparel to prepare it for ironing, sorting, or folding. Inspects articles for tears or missing buttons, and routes damaged articles to repair department. Sorts, folds, and stacks articles on handtrucks or hangs them on moving conveyor. May starch shirt collars and cuffs.

13

*Id.* § 361.687-026. The DOT describes the job of a wearing apparel shaker as having the same requirements as that of a garment folder. *Id.* The DOT describes the job of a linen grader as follows:

> Grades laundered towels and similar linens according to quality, condition, and kind of item. Ties them into bundles of specified size or number of articles and records contents of each bundle. Stores bundles in bins for delivery to customers of linen-rental service.

*Id.* § 361.687-022. The job of a linen grader entails light physical demands, common sense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving few concrete variables in or from standard situations, the ability to perform basic math functions, and to read, write, and speak at specified levels. *Id.* None of the jobs identified by the VE or ALJ involves more than casual contact with the general public and, therefore, the error, if any, was harmless. *See, e.g. Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) (not including driving impairment was harmless because the identified jobs did not involve driving); *Battle v. Astrue*, 243 F. App'x 514 (11th Cir. 2007) (incorrectly posing a claimant's educational level was harmless because it did not affect the VE's conclusion); *see also Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (finding harmless error when no further findings could be made that would alter the ALJ's decision).

### VI. Conclusion and Order

Upon consideration of the parties' briefs and the record, the court concludes that the Commissioner's decision is based on substantial evidence and is in accordance with controlling law. The Commissioner's decision will be affirmed by separate judgment.

In addition, it is

ORDERED that the plaintiff's motion for an award of EAJA fees is DENIED. *See* Doc. 12.

Done, on this the 9th day of September, 2020.

/s/ Susan Russ Walker  
Susan Russ Walker  
United States Magistrate Judge